UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER BALL,

          Plaintiff,

v.                            Case No. 22-CV-69

LANDMARK CREDIT UNION,

          Defendant.

---

## DECISION AND ORDER

### 1. Facts and Procedural History

Christopher Ball, who is representing himself, filed this action on January 19, 2022. (ECF No. 1.) On August 16, 2022, he moved for summary judgment. (ECF No. 22.) He demands that Landmark Credit Union pay him compensatory damages of $145,000 plus court costs of $442 and attorney fees of $2,000 (even though Ball is representing himself and is not an attorney). (ECF No. 22.)

Ball failed to comply with Civil Local Rule 56(b). He has not provided proposed findings of fact consistent with Civil Local Rule 56(b)(1)(C). That procedural defect is reason enough to deny his motion.

Instead, Ball asserts that Landmark has admitted all of the facts contained in Ball's "Affidavit of Truth" (ECF No. 21 at 7) because it did not respond. (ECF No. 23 at 8.) Ball bases his argument on 12 C.F.R. § 1102.33(d), which is a regulation related to the conduct of the Appraisal Subcommittee of the Federal Financial Institutions Examination Council. 12 C.F.R. § 1102.21(a). Ball's arguments are frivolous; 12 C.F.R. § 1102.33(d) is entirely irrelevant to this action.

Nonetheless, Landmark attempted to glean factual assertions from Ball's filings, to which it then responded. (ECF No. 32.) Landmark then offered its own proposed findings of fact. (ECF No. 32 at 7); *see* Civ. L.R. 56(b)(2)(ii). Ball both responded to Landmark's proposed findings of fact and replied in support of what Landmark determined were Ball's proposed facts. (ECF No. 39.) The court's rules do not permit a movant to submit a reply in support of his own proposed findings of fact. *Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, No. 20-CV-371, 2022 U.S. Dist. LEXIS 166539, at *3 (E.D. Wis. Sep. 15, 2022). But, more materially, at no point does Ball support any of his factual assertions with "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the fact described in that paragraph," as the court's rules require. Civ. L.R. 56(b)(1)(C)(i); *see also* Civ. L.R. 56(b)(2)(B)(i).

Given these procedural shortcomings, it would be appropriate to disregard the facts that Landmark gleaned from Ball's filings and deem Landmark's additional

proposed findings of fact admitted. But as is made clear in the discussion below, Ball's unsupported facts are legally immaterial to his summary judgment motion. The court discusses the factual assertions of the parties here only to give context to the dispute.

On December 21, 2021, Ball entered the Glendale branch of Landmark Credit Union. (ECF No. 32, ¶ 1.) His purpose was to obtain a $30,000 personal line of credit so he could purchase Christmas gifts. (ECF Nos. 1 at 3; 32, ¶ 2.) He met with a loan officer, who provided him with a loan application. (ECF No. 32, ¶ 3.) Ball answered some of the questions on the application—only the questions he felt were necessary to answer—and then gave the application back to the loan officer. (ECF No. 23 at 1; 32, ¶ 5.) Ball asserts that the loan officer never processed the application but instead put the application in a drawer in his desk. (ECF No. 23 at 1-2.) Ball argues that the loan application lacked certain disclosures required under the Truth in Lending Act, including details "about finance charges, annual percentage rates, [and] right to recission." (ECF No. 23 at 1.)

Ball alleges that, because he was denied his request for a $30,000 personal line of credit, he "ultimately was not able to purchase gifts for his family." (ECF No. 1 at 3.) He continues, "The unfair actions of Landmark Credit Union have caused humiliation and depression for Ball." (ECF No. 1 at 3.) He alleges that Landmark violated various provisions of Chapter 41 of Title 15 of the United States Code. (ECF No. 1 at 3 (citing 15 U.S.C. §§ 1605; 1606; 1631(a); 1631(b); 1635; 1637(a)(1); 1637(a)(2); 1637(a)(3); 1637(a)(4); 1637(a)(5); 1637(a)(7); and 1691).)

The court has subject matter jurisdiction under 28 U.S.C. § 1331. All parties have consented to this court in accordance with 28 U.S.C. § 636(c). (ECF Nos. 5, 11.)

2. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

3. **Analysis**

In his summary judgment motion "Ball claims that Landmark violated 15 USC 1691 when Landmark discriminately did not process his application." (ECF No. 23 at 2.) He continues, "Landmark claims that Ball may lack the assets needed to receive the

4
Case 2:22-cv-00069-WED    Filed 10/24/22    Page 4 of 11    Document 43

personal line of credit he applied for. The Truth In Lending Act details the right Ball has to credit no matter assets, employment or source of income." (ECF No. 23 at 3.)

The Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, et seq., prohibits creditors from discriminating against applicants "on the basis of race, color, religion, national origin, sex or marital status, or age," "because all or part of the applicant's income derives from any public assistance program," or "because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a)(1)-(3).

Ball argues that Landmark violated his "right" to credit by denying his application. He argues that he provided enough information for Landmark to extend him credit and the additional information that Landmark requested was "not necessary pursuant to the Truth in Lending Act and is an invasion of privacy." (ECF No. 23 at 4.)

Ball points to the definition of credit contained in 15 U.S.C. § 1602(f): "The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." He emphasizes that "credit is a right, not a privilege, but a right." (ECF No. 23 at 4.) He argues, "Landmark does not create the right to credit. TILA is an act enacted by Congress to protect consumers like Ball from predatory banking practices. Congress declared that Ball has a right to credit pursuant to 15 USC §1602(f). This credit was giving [sic] to Ball through credit cards from the United States." (ECF No. 38 at 2.)

He proceeds to argue that, under 15 U.S.C. § 1602(l), a United States Social Security card is a "credit card" (ECF No. 23 at 5) and debts incurred pursuant to that "credit card is the obligation of the United States." (ECF No. 23 at 6.) Therefore, in Ball's view, simply having a Social Security card "should suffice for payment of any type of account Landmark Credit Union has to offer." (ECF No. 23 at 6.) He further argues that his driver's license and license plate are each similarly a "credit card" "from the United States." (ECF No. 23 at 6.)

Consequently, it is Ball's view that,

> [t]he need for Landmark … to know private information such as source of income, housing expenses, employment seemed invasive and not necessary to Ball due to the fact that even if Landmark would have received the information, Landmark would have used one or two of Ball's credit cards to process the transaction anyway. And due to the fact that the obligation that arises from those cards are the obligation of the United States and there is no federal law under the Truth In Lending Act that requires that information to perform a consumer credit transaction, the information should not only be deemed private but unnecessary as well.

(ECF No. 23 at 7.)

Ball has a history of bringing similar lawsuits in this district. He asserted similar claims in 22-CV-5, *Ball v. Tesla Motors Inc.*, where he alleged that he "chose the Tesla Model Y and paid a $250 reservation fee." (22-CV-5, ECF No. 1.) He "applied for financing under a credit plan for which the plaintiff's social security card (credit card under 15 USC § 1602(l)) was charged electronically through a fraudulent loan application" and was "denied his right to credit due to 'a low FICO score and

delinquencies' on the plaintiff's credit file." (22-CV-5, ECF No. 1 at 3.) He sought $2,000,000 and the Tesla Model Y he attempted to purchase. (22-CV-5, ECF No. 1 at 5.)

Judge Adelman concluded that "Ball's suit is frivolous and subject to dismissal on that ground and on the ground that the complaint fails to state a claim upon which relief can be granted." *Ball v. Tesla Motors, Inc.*, No. 22-C-0005, 2022 U.S. Dist. LEXIS 83531, at \*2 (E.D. Wis. Mar. 31, 2022). But Tesla did not move to dismiss the complaint on those bases and instead sought to compel arbitration. Judge Adelman granted that motion and denied Ball's request to file an amended complaint. "The amendment would be futile because the claims against the banks are based on the plaintiff's baseless assertion that banks lack the legal authority to extend credit to anyone." *Id.* at \*6. Ball appealed, and the Court of Appeals for the Seventh Circuit dismissed that appeal for lack of jurisdiction. *Ball v. Tesla Motors, Inc.*, 22-1782 (7th Cir.).

In another action, 22-CV-68, *Ball v. Wisconsin Department of Workforce Development*, Ball asserted that his application for unemployment insurance was a consumer credit transaction, and therefore the Wisconsin Department of Workforce Development was required to make certain disclosures to him. He alleged that he "received a determination letter that not only threatened legal actions but also threatened to damage his reputation if the alleged debt was not paid." (22-CV-68, ECF No. 1 at 3.) He asserted, "The extortionate language used in the determination letter was obscene to Ball due to the fact that not only was a debt not owed to Unemployment, but the alleged

debt was already paid for." (22-CV-68, ECF No. 1 at 3.) He sought over $3.6 million. (22-CV-68, ECF No. 1 at 5.) Judge Adelman, on October 11, 2022, granted the defendant's motion to dismiss. (22-CV-68, ECF No. 18; *see also Dept. of Workforce Dev. v. Ball*, 2022UC5456 (Milwaukee Cnty. Cir. Ct. (stating that the Department of Workforce Development has an unemployment benefit compensation warrant against Ball in the amount of $25,114).)

Finally, on August 19, 2022, Ball filed an action against the United States Department of Education and others wherein he alleges "[t]he six defendants have executed an elaborate scheme to deprive Ball of his civil rights through repeated unfair actions which qualify as extortionate means pursuant to 18 USC § 891(7) and patterns of racketeering activity pursuant to 18 USC § 1961(1) and 18 USC 1961(5)." (22-cv-954, ECF No. 4 at 2.) *Ball v. United States Department of Education et al*, 22-cv-954 (E.D. Wis.). The action appears to relate to efforts to collect student loan debts allegedly owed by Ball, which Ball characterizes as a "pattern of racketeering activity" that "has caused great harm to Ball's reputation and life." (22-cv-954, ECF No. 4.) Based on his calculations, Ball asserts he is entitled to more than $1.3 billion. (22-cv-954, ECF No. 4 at 12-21.) That action remains pending, the defendants having not yet responded to the complaint.

The arguments that Ball makes in his present motion for summary judgment are frivolous and reflect a meritless and discredited theory that has found misguided adherents in certain isolated pockets of the internet and social media. *See, e.g.*, McKenzie

Sadeghi, *Fact check: Social Security numbers not linked to bank account with the Federal Reserve*, USA Today (May 27, 2021), https://www.usatoday.com/story/news/factcheck/2021/05/27/fact-check-social-security-numbers-not-linked-federal-bank-account/5219832001/. Ball's understanding of the law is not supported by the statutes' plain text, much less any principle of statutory construction. *See Dominic Young v. Nat'l Credit Audit Corp.*, No. 22-cv-1235-PJM, 2022 U.S. Dist. LEXIS 192281, at *9 (D. Md. Oct. 19, 2022) ("Young's interpretation of 15 U.S.C. § 1602(1) to include social security cards within the definition of 'credit cards' is mistaken."); *Washington v. Pac. Credit Exch.*, No. 21-cv-02374-JCS, 2021 U.S. Dist. LEXIS 179177, at *12 (N.D. Cal. Sep. 20, 2021) ("The Court is aware of no legal authority to support the proposition that such forms of identification are 'credit cards' within the meaning of the laws at issue.… While social security numbers and government identification cards are sometimes used as *identification* in the context of obtaining credit, they do not exist for the *purpose* of obtaining credit. Washington cannot base his claims on the premise that his social security card, social security number, or state identification card is a 'credit card.'" (emphasis in original)).

Ball appears to be arguing that, when Congress passed the Truth in Lending Act in 1968, Pub. L. No. 90-321, 82 Stat. 146, with the stated purpose "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit

9

card practices," 15 U.S.C. § 1601(a); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998), it also, without any publicity or even discussion in the Congressional Record, granted unlimited credit, guaranteed by the United States, to every person with a social security card, driver's license, or license plate. This assertion is patently absurd.

A social security card is *not* a "credit card" under 15 U.S.C. § 1602(l). The "right" referred to in 15 U.S.C. § 1602(f) is one granted by a creditor. Ball is *not* the creditor; the lender is the creditor. Absent a creditor first choosing to extend credit to a consumer, no "right" exists. Nor does any "right" to credit exist under any other authority referenced by Ball, including the Ninth Amendment. Ball's argument, which is that upon presentment of his Social Security card (or his driver's license or license plate) Landmark was required to provide him with $30,000, is meritless. Because Ball did not have any "right" to credit under 15 U.S.C. § 1602(f), Landmark did not violate 15 U.S.C. § 1691(a)(3) by not extending Ball credit.

Nor has Ball shown that Landmark violated any of the other statutes he referenced in his brief so as to be entitled to summary judgment. (ECF No. 23 at 10-13.)

Accordingly,

**IT IS THEREFORE ORDERED** that Ball's motion for summary judgment (ECF No. 22) is **denied**.

Dated at Milwaukee, Wisconsin this 24th day of October, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge