UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER BALL,

           Plaintiff,

v.                                     Case No. 22-CV-69

LANDMARK CREDIT UNION,

           Defendant.

## DECISION AND ORDER

**1. Facts and Procedural History**

Christopher Ball entered the Glendale, Wisconsin, branch of Landmark Credit Union on December 21, 2021, seeking a $30,000 line of credit. (ECF No. 46, ¶ 1.) A Landmark loan officer, Antwon Bond, gave Ball Landmark's standard loan application. (ECF No. 46, ¶ 2.) Ball provided his name, date of birth, social security number, and some other basic information on the form (ECF No. 46, ¶ 3), but he left much of the application, including information about his income, employment, expenses and debts, blank (ECF No. 46, ¶ 4). Before Landmark can assess an applicant's creditworthiness and approve a loan, it must have the information that Ball omitted. (ECF No. 46, ¶¶ 8-9, 15.)

The loan application Ball received from Landmark is a one-page standard form and does not contain disclosures of interest rates or loan terms. (ECF No. 46, ¶ 6.) Landmark's standard practice is to provide the disclosures required by the Truth in Lending Act (TILA) after the loan is approved and details like interest rate can be calculated. (ECF No. 46, ¶ 7.)

Landmark did not extend a loan or line of credit to Ball. (ECF No. 46, ¶ 16.) Consequently, it never charged him any fee or interest in relation to any loan or line of credit. (ECF No. 46, ¶ 17.)

Less than 30 days later, Ball filed suit against Landmark. (ECF Nos. 1; 46, ¶ 27.) He alleged that Landmark violated 15 U.S.C. §§ 1605, 1606, 1631(a) and (b), 1635, 1637(a)(1) – (5), (7), and 1691. Ball demands a $30,000 personal line of credit and $125,000 in "fines." (ECF No. 1 at 5.)

On October 25, 2022, Landmark filed a motion for summary judgment. (ECF No. 44.) Ball's response to Landmark's motion was due no later than November 28, 2022 (30 days after Landmark filed its motion, Civ. L.R. 56(b)(2), plus three days for service by mail, Fed. R. Civ. P. 6(d), plus one day because the last day was a Sunday, Fed. R. Civ. P. 6(a)(1)(C)). Although Landmark complied with Civil Local Rule 56(a)(1)(B) and provided Ball with copies of the relevant Federal Rule of Civil Procedure and Civil Local Rules (ECF No. 44), Ball failed to respond to Landmark's motion. Therefore, all of Landmark's proposed findings of fact are deemed admitted, *see* Fed. R. Civ. P. 56(e)(2);

Civ. L.R. 56(b)(4), and the court will grant the motion for summary judgment if the motion and supporting materials show that it is entitled to it, Fed. R. Civ. P. 56(e)(3).

The court previously denied Ball's motion for summary judgment. (ECF No. 37.) *Ball v. Landmark Credit Union*, No. 22-CV-69, 2022 U.S. Dist. LEXIS 192966 (E.D. Wis. Oct. 24, 2022).

**2. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

### 3. Analysis

As discussed in this court's decision denying Ball's motion for summary judgment, Ball's pursuit of a line of credit with Landmark rests on frivolous notions regarding the nature of credit and the meaning of various federal laws. *Ball*, 2022 U.S. Dist. LEXIS 192966, at *9-*12. He asserts that credit is a "right" guaranteed by the Ninth Amendment (ECF No. 47-1 at 9, 31:14-16), and he says that his social security card (as well as his driver's license and license plate) is a credit card (ECF No. 47-1 at 11, 37:1-4) guaranteed by the federal government. He contends that he can present his social security card to a financial institution like Landmark and that institution must then grant him an unlimited line of credit, which he insists is not a loan but his own "money from the Federal Reserve." (ECF No. 47-1 at 6, 19:18-20-12.) All of these assertions are wholly without merit. *Ball*, 2022 U.S. Dist. LEXIS 192966, at *9-*12.

Notwithstanding the frivolous arguments that underlie this suit, it is plausible that Landmark's actions in processing Ball's loan application violated federal law. Therefore, the court now turns to whether a reasonable trier of fact could find for Ball on any of his claims.

### 3.1.    15 U.S.C. § 1637(a)

Ball alleges that Landmark violated 15 U.S.C. § 1637(a)(1)-(5) and (7), which require creditors to disclose certain information "to the person to whom credit is to be extended." Section 1637(a) requires that the creditor make the disclosures "[b]efore

opening any account under an open end consumer credit plan." 15 U.S.C. § 1637(a). A consumer credit plan is opened when the first transaction occurs under the plan. *Muro v. Target Corp.*, 580 F.3d 485, 493 (7th Cir. 2009) (quoting 12 C.F.R. § 226.5(b)(1)). Because Landmark did not approve Ball's application and did not extend him credit, an open end consumer credit plan was never opened. Consequently, Landmark did not violate 15 U.S.C. § 1637(a). Landmark is entitled to summary judgment with respect to Ball's claims under 15 U.S.C. § 1637(a).

### 3.2. 15 U.S.C. §§ 1605 and 1606

15 U.S.C. § 1605 defines "finance charge" and sets forth how it is to be calculated. Similarly, 15 U.S.C. § 1606 defines "annual percentage rate" and sets forth how it is to be calculated. Neither statute, by itself, provides a cause of action. Rather, any cause action regarding an alleged failure to properly disclose a finance charge or annual percentage rate would lie under the specific provision of the TILA requiring such disclosure. The provisions applicable in this action would be 15 U.S.C. § 1637(a)(1)-(4). But, as noted, Ball has no claim under 15 U.S.C. § 1637(a) because an open end consumer credit plan was never opened. Therefore, Landmark is entitled to summary judgment as to Ball's purported claims under 15 U.S.C. §§ 1605 and 1606.

### 3.3. 15 U.S.C. § 1631(a) and (b)

Ball alleges that Landmark violated 15 U.S.C. § 1631(a) and (b). (ECF No. 1 at 3.) This statute sets forth to whom "the information required under this subchapter," *i.e.*, 15

U.S.C. §§ 1601-1667f, must be disclosed. For the same reasons that Ball's claims under 15 U.S.C. §§ 1605 and 1606 fail, so too does his claim under 15 U.S.C. § 1631(a) and (b). Because Landmark never approved Ball's application and therefore never opened a credit plan, Landmark did not violate the TILA by failing to make any disclosure. Because Landmark was not required to make any disclosure, it could not have violated 15 U.S.C. § 1631(a) or (b). Therefore, Landmark is entitled to summary judgment on Ball's purported claim under 15 U.S.C. § 1631(a) and (b).

**3.4.   15 U.S.C. § 1635**

An obligor has a three-day right to rescind any transaction "in which a security interest … is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended …." 15 U.S.C. § 1635(a). Whenever this right applies, the creditor must clearly disclose the right of rescission to the obligor. 15 U.S.C. § 1635(a).

Ball sought and expected a line of credit secured by his "credit card," which he contends was his social security card. (ECF No. 47-1 at 11, 39:8-9.) He did not own a home that could be used as collateral for a line of credit. (ECF No. 47-1 at 21, 79:4-80:17.) Because the transaction did not involve a security interest in Ball's principal dwelling, 15 U.S.C. § 1635 was inapplicable.

Beyond that, because Landmark never extended credit to Ball, there was no transaction to rescind. Consequently, Landmark is entitled to summary judgment on Ball's claim that Landmark violated 15 U.S.C. § 1635.

### 3.5. Discrimination under 15 U.S.C. § 1691

Ball alleges that Landmark violated 15 U.S.C. § 1691 of the Equal Credit Opportunity Act, which prohibits creditors from discriminating against a credit applicant on the basis of "race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)," 15 U.S.C. § 1691(a)(1), "because all or part of the applicant's income derives from any public assistance program," 15 U.S.C. § 1691(a)(2), or "because the applicant has in good faith exercised any right under this chapter," 15 U.S.C. § 1691(a)(3). 15 U.S.C. § 1691e(a) allows an "aggrieved applicant" to recover damages sustained as a result of a creditor's violation of Title 15, United States Code, Chapter 41, Subchapter IV, 15 U.S.C. §§ 1691—1691f. Ball seeks punitive damages pursuant to 15 U.S.C. § 1691e(b). (ECF No. 1 at 5.)

Ball's complaint does not describe how Landmark allegedly discriminated against him. In his deposition, Ball explained that he was alleging that Landmark violated 15 U.S.C. § 1691 by discriminating against him for exercising his "right to credit." (ECF No. 47-1 at 18, 66:4-9.) In other words, as the court understands Ball's allegations, he contends that simply because Landmark did not give him the line of credit he requested, it discriminated against him and thus violated 15 U.S.C. § 1691.

As this court previously stated, neither the Ninth Amendment nor federal law establishes a "right to credit." *Ball*, 2022 U.S. Dist. LEXIS 192966, at *11-12. Because Ball did not have a right to credit, Landmark did not "discriminate" against him in violation of 15 U.S.C. § 1691(a) by not granting him the $30,000 line of credit that he requested. Therefore, Landmark is entitled to summary judgment on Ball's claim that it discriminated against him in violation of 15 U.S.C. § 1691.

### 3.6.    15 U.S.C. § 1691(d)

"Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). A creditor's obligations under 15 U.S.C. § 1691(d)(1) are triggered only upon "receipt of a *completed* application for credit." 15 U.S.C. § 1691(d)(1) (emphasis added).

> A completed application means an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).

12 C.F.R. § 202.2(f). Ball alleges that he "never received the line of credit nor the reasons why adverse actions were taken pursuant to 15 USC l691(d)(l) et seq." (ECF No. 1 at 3.)

8

Case 2:22-cv-00069-WED   Filed 12/21/22   Page 8 of 16   Document 52

The document that Ball submitted was incomplete, and no reasonable finder of fact could find otherwise. (ECF Nos. 46, ¶ 4; 47-1 at 11-12, 38:17-41:12; 47-2.) He failed to provide certain basic information that was clearly requested on Landmark's form. (ECF No. 47-2 at 1.) Because Ball never submitted a completed application, Landmark's notification obligation under 15 U.S.C. § 1691(d)(1) was never triggered, *see Sims v. New Penn Fin. LLC*, No. 3:15-cv-263-MGG, 2018 U.S. Dist. LEXIS 51657, at *23 (N.D. Ind. Mar. 28, 2018).

However, a creditor cannot simply ignore an incomplete application. *See* 12 C.F.R. § 1002.9(c). When a creditor receives an incomplete application, it has three options under Regulation B. First, it may inform the applicant of a decision on the application. 12 C.F.R. § 1002.9(c)(1)(i). Second, it may inform the applicant in writing that the application is incomplete, specify what additional information is required, give him a reasonable period of time to provide the additional information, and inform him that it will not further consider his application if the additional information is not timely received. 12 C.F.R. § 1002.9(c)(2). Third, the creditor may orally request additional information from the applicant, but if the application remains incomplete, it must then provide written notice and request the additional information. 12 C.F.R. § 1002.9(c)(3). The creditor must act within 30 days. 12 C.F.R. § 1002.9(c)(1).

It was not until March 25, 2022, (over 90 days after Ball submitted his application) that Landmark provided Ball with written notice that his application was

incomplete. It sent a letter informing him that it required his gross monthly income, his current employer and length of employment, monthly rent or mortgage payment, list of all debts and credit accounts, and a copy of recent check stubs verifying his source of income. (ECF No. 47-3.)

Ball does not explicitly allege that Landmark violated 15 U.S.C. § 1691(d) by not timely informing him that his application was incomplete. In fact, Ball filed this action on January 19, 2022—less than 30 days after he submitted the form and before Landmark was required to provide him with any notice. Nonetheless, the court broadly construes Ball's claims and accepts that he is also alleging that Landmark failed to timely comply with 12 C.F.R. § 1002.9(c).

Ball's submission to Landmark was so patently incomplete that it could not be characterized as an "application" within the meaning of 12 C.F.R. § 1002.9(c). *See* 12 C.F.R. § 1002.2(f). "Application means an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested." 12 C.F.R. § 1002.2(f). Ball plainly failed to make a good faith effort to comply with Landmark's procedures. No reasonable person would think that simply providing a credit union with his name, address, date of birth, phone number, and social security number, while omitting other basic information, such as income, expenses, and debts, would constitute an application for a $30,000 line of credit. Because

Ball never submitted an "application" under Regulation B, Landmark did not violate 12 C.F.R. § 1002.9(c) by failing to timely inform him that his submission was incomplete.

Even if the court could accept that Landmark may have violated 12 C.F.R. § 1002.9(c), Ball's claim would nonetheless fail because there is no evidence that he suffered any damages as a result. Ball alleges he suffered "humiliation and depression" because he "was not able to purchase [Christmas] gifts for his family." (ECF No. 1 at 3.) He argues he is entitled to $10,000 pursuant to 15 U.S.C. § 1691e(b) as a result of Landmark's violation of 15 U.S.C. § 1691. (ECF No. 1 at 5.)

There is no evidence that Landmark's failure to provide him timely notice that his application was incomplete caused the "humiliation and depression" that Ball allegedly suffered from not being able to purchase Christmas gifts for his family. Landmark had 30 days in which to provide notice to Ball, which would have been long after Christmas.

Moreover, there is no evidence that timely notice would have enabled Ball to obtain a $30,000 line of credit from Landmark or any other institution. Ball was unemployed. He had last worked in June 2021 for two weeks as a merchandizer, earning $14 per hour. (ECF No. 47-1 at 3, 6:12-7:4.) Before that he was a "business partner with [his] ex-girlfriend's bakery," a position that did not pay any salary or wages. (ECF No. 47-1 at 3, 7:5-12.) He had been employed for two months in late 2019 making $13 per hour. (ECF No. 47-1, 7:13-25.) The only other employment-related

activity he could identify was his money-losing "clothing line." (ECF No. 47-1 at 23, 85:2-86:7.) He had about $50,000 in student loans (ECF No. 47-1 at 24:19-22), but he contends that those were "fraudulent" because he used his "credit card" for the loans (ECF No. 47-1 at 23, 88:2-15). He had recently been denied an auto loan for a Tesla because of a poor credit score. (ECF No. 47-1 at 25, 95:7-23.) He had no property other than a broken-down car. (ECF No. 47-1 at 21, 79:14-80:17.) Given these circumstances (and Ball's failure to present any evidence to the contrary) the only reasonable conclusion is that, if Ball had provided complete information on his application, his application for an unsecured $30,000 line of credit would have been denied.

Finally, even after he was informed that his application was incomplete, Ball made no effort to provide the additional information requested. Thus, there is no evidence that had Ball been timely notified that his application was incomplete he would have provided the additional information.

As for 15 U.S.C. § 1691e(b), that subsection imposes a $10,000 cap for "punitive damages." However, unlike traditional punitive damages, which are appropriate only for wanton, malicious, or oppressive conduct, courts have allowed punitive damages under § 1691e(b) if the creditor acts merely "in 'reckless disregard of the requirements of the law.'" *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1278 (9th Cir. 1982) (quoting *Shuman v. Standard Oil Co.*, 453 F. Supp. 1150, 1155 (N.D. Cal. 1978)). Moreover, damages under § 1691e(b) may be imposed even in the absence of actual damages. *Pena v.*

*Freedom Mortg. Team, Inc.*, No. 07 C 552, 2007 U.S. Dist. LEXIS 79817, at *7-8 (N.D. Ill. Oct. 24, 2007) (quoting *Anderson*, 666 F.2d at 1278; citing *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983)); *Bertin v. Grant Auto., Inc.*, No. 06-3002, 2007 U.S. Dist. LEXIS 31583, at *21 (C.D. Ill. Apr. 27, 2007).

Ball has not pointed to any evidence from which a reasonable finder of fact could conclude that Landmark's failure to inform him that his submission was incomplete was wanton, malicious, oppressive, or in reckless disregard of the law. As stated above, no reasonable person in Ball's position could have believed that his submission was complete. In the absence of any evidence of damages stemming from a violation of 12 C.F.R. § 1002.9(c), Landmark is entitled to summary judgment as to Ball's claim under 15 U.S.C. § 1691(d).

### 4. Ball's "Motion to Vacate Order"

Ball filed a "Motion to Vacate Order" wherein he asks the court to "Vacate the Order to Dismiss." The court did not enter any "Order to Dismiss." Based on the substance of his motion it is clear that Ball is actually asking the court to reconsider its Decision and Order denying his motion for summary judgment. He threatens to "wage a legal vendetta against this court … if forced to by the blatant lack of respect for federal statutes and judicial process." (ECF No. 48 at 5.)

The court previously explained to Ball that such motions for reconsideration serve a very limited purpose. *See Ball v. Landmark Credit Union*, No. 22-CV-69, 2022 U.S.

Dist. LEXIS 168333, at *1 (E.D. Wis. Sep. 19, 2022). Having closely reviewed Ball's motion and considered his arguments, the court finds no basis to alter its prior decision to deny his motion for summary judgment. Ball's arguments reflect various misunderstandings—some trivial and others profound. For example, he appears to misunderstand the distinction between the Federal Rules of Civil Procedure and this court's Local Rules, both of which litigants must comply with. (ECF No. 49 at 2-3.) He misunderstands the role of affidavits in litigation. (ECF No. 49 at 4.) He fails to appreciate how a court may appropriately rely on a litigant's actions in prior cases to understand and assess his current claims (ECF No. 49 at 5-6) or how a press report addressing similar claims is relevant to providing background to a claim (ECF No. 49 at 7-8).

The court finds it unnecessary to respond to each of Ball's assertions. Unfortunately, it appears that no measure of further analysis or explanation will help Ball understand his errors regarding the meaning and import of the federal laws upon which he relies. It will suffice to say that Ball's arguments are without merit and do not justify altering the court's prior decision. Consequently, his motion (ECF No. 48) will be denied.

5. **Permission to Proceed In Forma Pauperis**

The Honorable Lynn Adelman granted Ball permission to file this action without prepayment of the filing fee. (ECF No. 3.) The subsequent proceedings in this matter

have demonstrated that Ball's claims are frivolous. Therefore, in accordance with 28 U.S.C. § 1915(a)(3), Fed. R. App. P. 24(a)(3)(A), and *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999), in conjunction with any notice of appeal, Ball must submit a statement of his grounds for appealing so as to permit the court to assess whether a good faith basis exists for any such appeal. The court will then assess whether Ball may proceed in forma pauperis on appeal. Failure to submit a statement demonstrating a good faith basis for appeal will result in the court revoking its permission that he be allowed to proceed in forma pauperis.

**IT IS THEREFORE ORDERED** that Landmark Credit Union's motion for summary judgment (ECF No. 44) is **granted**. Ball's complaint and this action are dismissed with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Christopher Ball's "Motion to Vacate Order" (ECF No. 48) is **denied**.

**IT IS FURTHER ORDERED** that any notice of appeal must be accompanied by a statement demonstrating that a good faith basis exists for an appeal.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment (60 days if one of the parties is, for example, the United States, a United States agency, or a United States officer or employee sued in an official capacity). *See* Federal Rule of Appellate

Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 21st day of December, 2022.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge